**SEND**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-2852 PA (OPx) | | Date | May 9, 2011 |
|---|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |
|---|---|

| Paul Songco | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS - COURT ORDER

Before the Court is a Motion for Temporary Injunction filed by petitioner James McDermott ("Petitioner"). (Docket No. 2.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for May 9, 2011, is vacated, and the matter taken off calendar.

**I.   Background**

Respondent Veritas Health Services Inc. d/b/a Chino Valley Medical Center ("Respondent") is a hospital located in Chino, California. Respondent offers a wide range of services for outpatient and inpatient treatment, and currently employs approximately 600 employees.

In April 2008, the United Nurses Associations of California/Union of Health Care Professions NUHHCCE, AFSCME, AFL-CIO ("the Union") filed an election petition with the National Labor Relations Board ("the Board") to become the bargaining representative for Respondent's employees. Respondent and the Union agreed that Charge Nurses would not be able to vote in the election. In May 2008, an election was conducted; the Union lost the election with 48 votes in favor of the Union and 65 votes against.

The Union started another organizing drive in late 2009. During that organizing drive, Respondent contends, the Union improperly targeted the Charge Nurses to organize the registered nurses on behalf of the Union. Subsequently, in an election conducted on April 1-2, 2010, the Union won by a vote of 72 votes in favor of the Union and 39 against. Respondent filed objections to the election based on the Union's utilization of Charge Nurses in support of its organizing campaign. Following an evidentiary hearing and briefing, Respondent's objections were overruled by a Board Administrative Law Judge; that decision was subsequently adopted by the Board on January 25, 2011, and the Union was issued a Certification of Representative.

Respondent maintains its objections to the election and is in the process of obtaining judicial review of the Board's decision. Because such judicial review could only be obtained if Respondent refused to bargain with the Union and obtained an unfair labor practices ruling reviewable by the Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | Date | May 9, 2011 |
|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | |

Court of Appeals, Respondent advised the Union that it refused to bargain with it.  In response to Respondent's refusal to bargain, the Board filed an unfair labor practice complaint and succeeded on a motion for summary judgment.  Respondent is now petitioning the D.C. Circuit Court of Appeals for review of that judgment.

      The current action is based on a number of unfair labor practice charges filed by the Union between May 7, 2010 and September 30, 2010.  More specifically, Petitioner, the Regional Director of Region 31 of the Board, contends that Respondent violated the National Labor Relations Act ("NLRA") in the following ways:

- Approximately three weeks before the Union election, the Emergency Room manager handed an employee a piece of paper which said, "Say No" to the Union.  The manager asked the employee if she knew that election of the Union would change the relationship between the management and the employees, and then said, "You know how you take a whole month to go overseas?"  Petitioner contends that this constituted an unlawful threat to the employee.

- Around the same time, an employee overheard Respondent's labor consultant telling a charge nurse and registered nurse that Respondent could close down the hospital, fire all of them, and just keep the ones they wanted to keep.   Petitioner contends that this statement was also an unlawful threat.

- Approximately one to two weeks before the election, employee Ronald Magsino attended a mandatory meeting at which Respondent's Vice President of Operations informed the employees that if the Union won the election, the employees would have to pay dues and lose the hospital's family atmosphere and flexibility with scheduling.  Petitioner asserts that this statement constituted a threat to deprive the employees of existing benefits based on the selection of Union representation.

- The day before the Union election, Respondent's Chief Medical Officer, Dr. James Lally ("Dr. Lally"), called an employee to meet with him privately.  Dr. Lally asked the employee if she knew about a particular Union flyer, pointed out to her that Respondent had never laid off its employees, and stated that he did not like unions.  Petitioner contends that this constituted improper interrogation and an improper threat of termination.

- After the Union election, one of Respondent's per diem employees attempted to obtain reimbursement for attending a re-certification class.  Her request was denied on the basis of her per diem status, even though Petitioner contends that Respondent's previous practice was to reimburse all employees for attending such classes.  Respondent asserts that its reimbursement policy has not changed.

- Approximately two weeks after the Union election, Dr. Lally approached Mr. Magsino, an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | | Date | May 9, 2011 |
|---|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | | |

alleged lead Union supporter, and told him that he had been seen on camera talking to a group of nurses during work hours and looked like he was organizing something. Dr. Lally told Mr. Magsino that he did not think the Union could protect Mr. Magsino. When Mr. Magsino asked if he would be written up or suspended, Dr. Lally responded that his actions were grounds for termination. Petitioner contends that Dr. Lally's statements constituted an unlawful threat.

- Several weeks after the Union election, Charge Nurse Terri Hower told an employee that only two-week vacations would be allowed, rather than the three- to four-week vacations that were previously permitted. Petitioner contends that the timing of this statement supports the inference that employees' benefits were reduced because they voted for the Union.

- After the Union election, Respondent also began enforcing its tardiness and meeting attendance policies more strictly. Respondent began issuing verbal and written warnings to employees who violated these policies, even though it had not done so in the past. In addition, Respondent informed employees that no shift changes would be allowed once a schedule was posted; Respondent's previous practice was to allow employees to trade shifts as long as it did not create overtime problems. Petitioner contends that Respondent's enforcement of previously-unenforced policies violated the NLRA.

- Approximately one month after the Union election, Respondent issued a "Performance Improvement Plan" form to an employee for failing to call when she reported to work late. Petitioner contends that Respondent improperly denied the employee the right to have a Union representative present at the meeting where the form was issued.

- At around the same time, Respondent gave employee Ronald Magsino a final warning for unsatisfactory work performance based on the Department of Health's investigation of one of his patient's charts. In response to this warning, Mr. Magsino asked to print the patient's chart so he could dispute the finding. Respondent gave him permission to do so. However, when Mr. Magsino submitted his dispute letter to Human Resources, it was attached to a copy of the patient's chart, which contained the patient's medical record and account number and doctor's dictation and nursing notes. Respondent informed Mr. Magsino that he had violated the Health Insurance Portability and Accountability Act ("HIPAA") by including this information with the dispute letter.

- During a subsequent interview, Mr. Magsino also admitted he had accessed and printed the same patient's medical record on several other occasions, taken the patient records off-site, and was carrying a copy in his backpack. Respondent determined that these breaches of its policies and procedures, and possibly state and federal law, constituted grounds for termination. Respondent thus terminated Mr. Magsino on May 20, 2010. Petitioner contends that Mr. Magsino's Union activities were a motivating factor in Respondent's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | Date | May 9, 2011 |
|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | |

      decision to terminate him.

- Approximately six weeks after the Union election, Respondent served employees and the Union with subpoenas in connection with the post-election hearing on Respondent's objections. Petitioner contends that Respondent's requests for information regarding employee communications with the Union were in violation of the NLRA.

      Now, Petitioner requests that the Court enter a temporary injunction pursuant to section 10(j) of the NLRA, so that the Union may obtain injunctive relief prior to the Board's administrative hearing, which is scheduled to start on June 6, 2011. Petitioner asks that the Court grant a temporary injunction enjoining Respondent from its allegedly unlawful activities in threatening and disciplining employees based on their Union activities. In addition, Petitioner asks that the Court order Respondent to: reinstate Ronald Magsino to his position of employment; remove the discipline references based on tardiness and lack of attendance for certain employees; rescind the alleged changes to its tardiness, attendance, scheduling and reimbursement policies; bargain with the Union before changing employees' wages, hours or other conditions; post copies of the Injunction Order around the hospital; read the Order aloud to employees at a hospital-wide meeting; and file an affidavit with the Court setting forth Respondent's compliance with the Order.

      **II. Legal Standard for Temporary Injunction**

      Section 10(j) of the National Labor Relations Act provides that, upon the issuance of a complaint charging an unfair labor practice, the Board may petition the Court for appropriate temporary relief, and the Court "shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j). Injunctive relief under § 10(j) is intended to preserve the status quo pending final action by the Board. Scott ex rel. NLRB v. Stephen Dunn & Assocs., 241 F.3d 652, 660 (9th Cir. 2001).

      In determining whether interim relief is "just and proper," district courts consider the traditional equitable criteria used in deciding whether to grant a preliminary injunction. Miller v. Pac. Med. Ctr., 19 F.3d 449, 459 (9th Cir. 1994). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id.; see also Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

      The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions as part of this four-element test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Under this "sliding scale," "'serious questions going to the merits' and a hardship balance that tips

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | | Date | May 9, 2011 |
|---|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | | |

sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Id. at 1132. Thus, a plaintiff seeking a preliminary injunction must make a showing on all four prongs of the test. Id. at 1135. Under no circumstance may a plaintiff obtain a preliminary injunction unless it can show that irreparable harm is not only possible, but likely to result in the absence of the injunction. Id.

### III. Analysis

Petitioner contends that irreparable harm will result if a temporary injunction is not granted because: (1) "[b]y the time the Board issues its final bargaining order, it will be too late to preserve employee free choice and for the Union to regain its lost support" (Motion at 20); (2) the loss of support for the Union will result in the Union's diminished strength at the bargaining table when the parties begin negotiations for an initial contract (Motion at 21); (3) employees will be deprived of the benefits of Union representation until a final decision is issued by the Board (Motion at 23); and (4) interim reinstatement of employee Ronald Magsino will decrease the likelihood that he will have moved on to another job and be unavailable for reinstatement when the Board issues its final order. Petitioner does not cite to any specific evidence to support these contentions, but merely asserts that "after the election, employees expressed fear about talking about the Union and many employees stopped attending Union meetings." (Motion at 21.)

A plaintiff "may not obtain a preliminary injunction unless [it] can show that irreparable harm is likely to result in the absence of the injunction." Alliance For The Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has emphasized that "Plaintiffs must show a likelihood, not a mere possibility, of irreparable injury." Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 2011 U.S. App. LEXIS 3683 at *34 (9th Cir. 2011). "The essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case." United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 175 (9th Cir. 1987). As such, irreparable harm is not presumed "simply because a defendant violates a statute that authorizes injunctive relief." Park Vill., 2011 U.S. App. LEXIS 3683 at *34; see Small ex rel. NLRB v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, 611 F.3d 483, 494 (9th Cir. 2010) (expressly rejecting Ninth Circuit's prior holding that once a likelihood of success is established, district courts are required to presume irreparable injury in statutory enforcement actions).

Here, Petitioner has failed to establish a likelihood of irreparable harm that will result if the Court denies a temporary injunction. The alleged incidents of employee discipline that provide the basis for the unfair labor practice charges took place in April-May 2010. Petitioner did not file this Petition until April 5, 2011 -- one year after the alleged violations. As such, a considerable amount of time has passed since the incidents that allegedly resulted in the Union's lost support and diminished strength. Although "[d]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper[,]" the factor of delay is significant "if the harm has occurred and the parties cannot be returned to the status quo or if the Board's final order is likely to be as effective as an order for interim relief." McDermott ex rel. NLRB v. Ampersand Publ'g, LLC, 593 F.3d 950, 963 (9th Cir. 2010) (internal

Case 2:11-cv-02852-PA -OP Document 29 Filed 05/09/11 Page 6 of 7 Page ID #:1248

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | | Date | May 9, 2011 |
|---|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | | |

citations and quotation marks omitted).

Given the amount of time that has passed since Respondent's unfair labor practices, any loss of support or diminished strength that the Union might have suffered has likely already been realized. Notably, Petitioner concedes that "Respondent's unlawful conduct . . . has already severely eroded the 'prestige and legitimacy' of the Union in the eyes of the employees . . . ." (Motion at 22.) Although Petitioner contends that Union support will decline further in the absence of any interim relief, Petitioner has not offered any support for this contention. The declarations of Respondent's employees, which were written in June 2010, only show that Union support declined immediately after Respondent's unfair labor practices; there is no indication that Union support has continued to decline since then. Thus, the Board's final order is likely to be as effective as any order for interim relief, especially given that the Board's administrative hearing is scheduled to take place in less than one month.

Petitioner has also failed to submit any evidence to support its concern that employees will not have the benefit of Union representation between now and the Board's issuance of its final decision. Petitioner contends that it is only seeking a limited injunction insofar as "Respondent would not be required to bargain for an initial contract, only to bargain with the Union over any change to terms and conditions that Respondent wants to implement after rescinding the unilateral changes covered by the interim order." (Motion at 22, n. 21.) The "unilateral changes" for which Petitioner is seeking rescission are those relating to Respondent's current method of enforcing its policies regarding tardiness, meeting attendance, shift scheduling, and education reimbursement. However, because Petitioner only seeks to protect its ability to bargain with Respondent over terms and conditions that might be imposed after rescission of the "unilateral changes," this argument presumes that the Court will grant a temporary injunction. Petitioner has not yet established that the "changes" should be rescinded. As such, Petitioner has failed to establish a likelihood of irreparable harm due to the lack of Union representation.

Petitioner has also failed to show a likelihood of irreparable harm if Ronald Magsino is not reinstated before the Board issues its final order. Although Petitioner asserts that Mr. Magsino may move on to another job and thereby become unavailable for reinstatement by the time the Board issues its ruling, it has not offered any evidence to show that Magsino is likely to obtain another job before that date. Further, because Mr. Magsino was terminated a year ago, it is unlikely that the Court's issuance of a temporary injunction requiring his immediate reinstatement would have any greater effect than a final order from the Board. Although Petitioner contends that Magsino's reinstatement would "restore a Union leader . . . and reassure other employees that they are free to support the Union without fear of employer retaliation" (Motion at 21-22), there is no evidence indicating that Magsino's continued absence between now and the Board's final order will have any effect on Respondent's employees. Although Petitioner has submitted declarations from certain of Respondent's employees indicating that they were afraid of being terminated shortly after Mr. Magsino was terminated, there is no indication that that fear is still in place, given that no other Union leaders appear to have been terminated in the year since Mr. Magsino's departure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-2852 PA (OPx) | Date | May 9, 2011 |
|---|---|---|---|
| Title | James McDermott v. Veritas Health Services, Inc. d/b/a/ Chino Valley Medical Center | | |

  Given that Petitioner has failed to satisfy its burden of showing irreparable harm, it is not entitled to a temporary injunction and the Court need not address the remaining factors of success on the merits, balance of hardships, and the public interest. <u>Ctr. for Food Safety v. Vilsack</u>, 2011 U.S. App. LEXIS 3790 at *21 (9th Cir. February 25, 2011); <u>Bean v. Pearson Educ., Inc.</u>, 2011 U.S. Dist. LEXIS 38360 (Dist. Ariz. March 30, 2011); <u>Network Indus. v. Jungheinrich Aktiengesellschaft</u>, 2011 U.S. Dist. LEXIS 6451 at *7 (S.D. Cal. January 24, 2011).

### CONCLUSION

  For the foregoing reasons, the Court concludes that Petitioner has failed to establish the likelihood of irreparable injury, and has therefore failed to meet its burden in establishing that a temporary injunction would be just and proper. Accordingly, Petitioner's Motion is denied.

  The Court also denies Respondent's Request to Cross-Examine Declarants (Docket No. 19) and overrules Respondent's Evidentiary Objections as moot.

  IT IS SO ORDERED.